MARK JAY BRAFMAN *v.* STATE OF MARYLAND

[No. 207, September Term, 1977.]

*Decided January 11, 1978.*

The cause was submitted on briefs to THOMPSON, MELVIN and WILNER, JJ.

Submitted by *Stuart Jay Robinson* for appellant.

Submitted by *Francis B. Burch, Attorney General, Alexander L. Cummings, Assistant Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *Dana M. Levitz, Assistant State's Attorney for Baltimore County,* for appellee.

MELVIN, J., delivered the opinion of the Court.

On January 19, 1977, Mark Jay Brafman (appellant) was found guilty by a jury in the Circuit Court for Baltimore

County of rape; use of a handgun in the commission of a felony (rape); perverted sexual practices; kidnapping; use of a handgun in the commission of a felony (kidnapping); and robbery with a dangerous and deadly weapon. Sentences totaling twenty-three years were imposed on January 19, 1977. These crimes were allegedly committed on September 22, 1972, at which time the appellant was sixteen years old. He presents four questions for our review:

"1. Did the lower Court err in violating the Appellant's juvenile rights by assuming automatic jurisdiction over the indictment hearing without juvenile waiver hearing prior to criminal jurisdiction attaching?

2. Did the trial court err in its failure to include specific language in its instruction with regard to the alibi requirements for burden of proof as they pertain to the defense?

3. Did the Court err in allowing evidence concerning Nancy Stang because the jury might have been misled into a conviction based on an offense upon which the Appellant was not tried, or that he would be prejudiced by confrontation with an offense for which he was not prepared to defend?

4. Did the trial court err in its advisory instructions to the jury concerning the testimony surrounding the Nancy Stang incident of September 19, 1972?"

Because we are of the opinion that the trial court committed reversible error in instructing the jury relative to the testimony of Nancy Stang, we will reverse appellant's convictions and remand the case for a new trial. This action renders consideration of appellant's second question unnecessary. We will consider appellant's first and third questions for the guidance of the trial court on remand.

I

Appellant first contends that because he was sixteen years old at the time the crimes were allegedly committed, the lower court committed reversible error in assuming jurisdiction

over all of the offenses charged in the indictment. In appellant's previous appeal to this Court (*Brafman v. State,* Sept. Term, 1974, No. 269 *per curiam,* filed December 31, 1974, *rev'd. other grounds,* 276 Md. 676 (1976)), we rejected this contention with respect to the charges of rape; use of a handgun in the commission of a felony (rape); perverted sexual practices; and robbery with a dangerous and deadly weapon. We again reject this contention.

This leaves for our consideration, however, the charges of kidnapping and use of a handgun in the commission of a felony, to wit: kidnapping.[1] We conclude that no waiver of jurisdiction was necessary with respect to these charges as well. Former Art. 26, § 70-2 (d) (1) (1972 Supp.), the relevant statutory provision in effect at the time of the alleged offenses, provided that the juvenile court does not have jurisdiction over:

> "A proceeding involving a child who has reached his 14th birthday, alleged to have done an act which, if committed by an adult, would be a crime punishable by death or life imprisonment (including a lesser offense or *an offense arising out of the act alleged to have been committed*), unless an order removing the proceeding to the juvenile court has been filed pursuant to § 594A of Article 27." (Emphasis supplied).

The evidence shows that at 9:30 A.M. on September 22, 1972, an individual identified as the appellant approached the victim on the parking lot of a shopping center on Reisterstown Road, asked her for directions to "Garrett Road", then forced her at gun point into his red car, "with a black top", and then drove to a secluded place where he raped her. It is clear that although the kidnapping and use of a handgun in the commission thereof preceded the rape, they were both part of a single criminal incident or transaction that culminated in

---

1. In the previous appeal (Brafman v. State, *supra*) these two charges were not before us as the trial judge had *sua sponte* arrested judgment on the jury's verdict of guilty as to them. The record now before us does not reveal the reason for the arrest of judgment. Upon retrial, appellant objected to being tried again on the kidnapping and related handgun charges. The trial judge overruled the objection. That ruling is not before us in this appeal.

that alleged act and therefore were, within the meaning of the statute, "offenses arising out of the act alleged to have been committed." As rape is an act which, if committed by an adult, would be a crime punishable by life imprisonment, the juvenile court was without jurisdiction as to these offenses, absent a "reverse waiver" order by the Circuit Court pursuant to Section 594A of Article 27. There being no such order,[2] the Circuit Court had jurisdiction over the kidnapping and related handgun charge — along with the other offenses with which appellant was charged as part of the same criminal incident or transaction.

Any doubt that we have correctly interpreted the legislative intent of former Art. 26, § 70-2 (d) (1) is resolved by subsequent legislative actions concerning the matter. In 1973, the legislature by ch. 2, § 1, Acts of 1973 (1st Sp. Sess.), substituted the phrase *"or an associated offense"* for the phrase appearing in parentheses in former Art. 26, § 70-2 (d) (1) quoted above. The revisor's note, C. & J. Proc. Art., § 3-308 (1974), states that "the phrase 'associated offense' is substituted for 'an offense arising out of the act alleged to have been committed' for the purpose of clarity." In 1975, by ch. 554, Acts of 1975, this latter phrase was changed to ". . . *all other charges against the child arising out of the same incident"* and now appears in § 3-804 (d) (1) of the Courts and Judicial Proceedings Article of the Annotated Code (1976 Cum. Supp.). We think it clear that these two enactments were merely legislative interpretations of the prior statute, intended to declare the original intent that under circumstances such as exist in the present case the kidnapping and related handgun charges were without the original jurisdiction of the juvenile court. As we said in *The Swarthmore Company v. Comptroller of the Treasury,* 38 Md. App. 366 (1977):

"While subsequent legislative interpretation of a prior statute is not binding or controlling on the Court, *Crunkleton v. Barkdoll,* 227 Md. 364, 369, 177 A. 2d 252, 255 (1962), a subsequent 'statute

purporting to declare the intent of an earlier one might be of great weight in assisting a court when in doubt.' *United States v. Stafoff,* 260 U. S. 477, 480, 43 S. Ct. 197, 199, 67 L. Ed. 358, 361 (1923)."

## II

With regard to appellant's third question, appellant contends that the trial judge committed reversible error in admitting over objection the testimony of Mrs. Nancy Stang that three days before the victim in the instant case was criminally attacked she too was accosted by a male person she later identified as the appellant. Mrs. Stang testified that she was twenty-three years old (the victim in the instant case was twenty-five years old) and that on September 19, 1972, at approximately 9 o'clock in the evening, the male person approached her car as she was about to drive away from a shopping center on Reisterstown Road (approximately two miles from the shopping center involved in the instant case). The person asked her for directions to "Granite Road". (She said she had noticed him before she went into one of the shopping center stores because "he had tapped someone else's car" with his car — a red Ford convertible. She was not sure of the color of the top of the car.) As she began to give him directions to Granite Road, he went back to his car supposedly for a pencil and paper. When he returned to her car "he had a gun at the window telling me to pull back into the lot and get into ... [his] car." She "pulled back into the lot" and got out of her car. She described what happened next:

"Q What happened then?

A Well, I had locked the car and I got out and he told me to get in his car and he said if I didn't he was going to shoot me, and I said: Go ahead. I would not get in the car.

Q Did you say anything particular to him?

A I said: Go ahead and shoot me.

Q Why did you say that?

A Because he told me to get in his car where he would shoot me.

Q What happened when you told him you weren't going to get into his car?

A He more or less just panicked and jumped into his car and took off."

Appellant contends that the evidence concerning the alleged criminal actions toward Mrs. Stang does not come within any of the exceptions to the general exclusionary rule that "in a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same type, is irrelevant and inadmissible." *Ross v. State,* 276 Md. 664, 669, 350 A. 2d 680 (1976). The Court in *Ross* went on to say:

"This principle is merely an application of the policy rule prohibiting the initial introduction by the prosecution of evidence of bad character. Thus, the state may not present evidence of other criminal acts of the accused unless the evidence is 'substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character.' C. McCormick, Evidence § 190 (2d ed. 1972).

"Moreover, apart from the fundamental proposition that an accused may be convicted only by evidence which shows that he is guilty of the offense charged, and not by evidence which indicates his guilt of entirely unrelated crimes, there are additional reasons underlying the general rule. Evidence of other crimes may tend to confuse the jurors or prejudice their minds against the accused and to predispose them to a belief in his guilt. Finally, unless he knows in advance that evidence of other crimes is to be used against him, the accused will be unprepared to defend against such evidence. *MacEwen v. State, supra,* 194 Md. at 501; Wharton's Criminal Evidence § 240 (Torcia ed. 1972).

"There are exceptions to this general exclusionary

rule which, perhaps, are equally well-recognized. Thus, evidence of other crimes may be admitted when it tends to establish (1) motive, (2) intent, (3) absence of mistake, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) the identity of the person charged with the commission of a crime on trial. *Wentz v. State,* 159 Md. 161, 164, 150 A. 278 (1930); *Cothron v. State,* 138 Md. 101, 110, 113 A. 620 (1921); *Chandler v. State,* 23 Md. App. 645, 650, 329 A. 2d 430, *cert. denied,* 274 Md. 726 (1974); *Wethington v. State, Gorski v. State,* both *supra.* Additional exceptions have also been recognized: When the several offenses are so connected in point of time or circumstances that one cannot be fully shown without proving the other, and to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial, *Berger v. State,* 179 Md. 410, 414, 20 A. 2d 146 (1941); and *to prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused.* C. McCormick, Evidence § 190, *supra.*" (Emphasis added.)

The State in its brief argues that the challenged evidence is admissible because it establishes "(1) intent, (2) absence of mistake or accident or (3) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other."

At the outset of the trial below, it was made clear to the court and jury, by both the prosecutor and defense counsel, that the only contested issue in the case was the identity of the appellant as the person who committed the crimes for which he was then on trial. The identification testimony of the rape victim was subjected to vigorous cross-examination, and the appellant, testifying in his own behalf denied any participation in the criminal incidents of September 22 or those involving Nancy Stang on September 19 and offered alibi witnesses as to both days' incidents.

In ruling that the "other crimes" evidence was admissible the trial judge did not indicate which of the recognized exceptions he felt formed the basis for its admissibility, and the State did not specify the particular basis on which it sought its admission. In our view, in the circumstances of the instant case as reflected by the present record, the evidence of the prior criminal incident is admissible only if it comes within the exception known as the "handiwork" or "signature" exception mentioned in *Ross*. This exception is described in C. McCormick, Evidence § 190 at p. 449 (2d ed. 1972) as follows:

"To prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be *so unusual and distinctive* as to be like a signature." (Emphasis added; footnotes omitted).

If the evidence comes within that exception it is relevant to the issue of appellant's criminal agency and is admissible — *unless* in the exercise of its discretion the trial court determines that its probative value on this issue is outweighed by its prejudicial effect. *See Hoes v. State,* 35 Md. App. 61, 70 (1977); *Mollar v. State,* 25 Md. App. 291 (1975). *See also* McCormick, Evidence § 190, p. 453. Thus, in the instant case, upon remand, if the State offers other-crimes evidence as coming within the "handiwork" or "signature" exception, the trial judge, in determining its legal relevancy to the issue of appellant's criminal agency, must first determine whether the facts pertaining to the "other crimes", as shown by clear and convincing proof, are sufficiently similar and possess a sufficiently high degree of common features with the acts charged to warrant the inference that if the defendant committed the other acts he committed the acts for which he is on trial. To lessen the danger that the other-crimes evidence will be viewed by the jury merely as evidence of the defendant's disposition or propensity to commit crimes

474

similar to those for which he has been indicted, the common features "must be so unusual and distinctive as to be like a signature". McCormick, *supra* at 449; *Ross v. State, supra.* To further lessen the danger that the jury will decide the defendant's guilt upon improper considerations, the trial judge must then decide, even though the other-crimes evidence may warrant an inference that the defendant is "the right man", whether the probative value of the evidence outweighs its prejudicial effect. "A decision clearly wrong on this question of balancing probative value against danger of prejudice will be corrected on appeal as an abuse of discretion." McCormick, *supra* at 454.

The Court of Appeals has said that "the introduction of evidence which shows other offenses by the accused should be subjected to rigid scrutiny by the courts because of the great potential for danger which characterizes it. [Citations omitted]." *Ross v. State, supra* at 671. To summarize, where the other-crimes evidence is offered as coming within the "handiwork" or "signature" exception to the general exclusionary rule, this "rigid scrutiny" requires the trial judge to consider the following factors before allowing the jury to consider it over the defendant's objection:

> 1) The commonality of the facts between the "other crimes" and the immediate charges. Here, the common features must be so unusual and distinctive as to indicate that if the defendant committed the "other crimes" he committed the acts for which he is on trial.

> 2) The convincingness of the evidence that the other crimes were committed and that the defendant was the actor. Here, clear and convincing proof is required.

> 3) The probative value of the other-crimes evidence on the issue of criminal agency as weighed against the prejudicial effect of such evidence. Here, the trial judge must consider the actual need for the other-crimes evidence in the light of other evidence available to the prosecution on the issue of criminal

agency. Another factor to be considered is surprise, i.e., whether the defendant has had prior notice of the proposed evidence and an opportunity to prepare a rebuttal. Also, of course, it must be clear that the defendant's criminal agency is indeed a genuine issue in the case. If, for example, consent is the only defense in a rape case, there would be no need to introduce other-crimes evidence to show the criminal agency of the defendant.

It can thus be seen that the determination of the admissibility of other-crimes evidence in criminal cases involves something more than merely determining whether the particular evidence of other crimes does or does not fit within one of the recognized exceptions to the general exclusionary rule. The problem is one of balancing, discussed by McCormick, *supra* at 452-454:

"There is an important consideration in the practice as to the admission of evidence of other crimes which is little discussed in the opinions. This is the question of rule versus discretion. Most of the opinions ignore the problem and proceed on the assumption that the decision turns solely upon the ascertainment and application of a rule. If the situation fits one of the classes wherein the evidence has been recognized as having independent relevancy, then the evidence is received, otherwise not. This mechanical way of handling these questions has the advantage of calling on the judge for a minimum of personal judgment. But problems of lessening the dangers of prejudice without too much sacrifice of relevant evidence can seldom if ever be satisfactorily solved by mechanical rules. And so here there is danger that if the judges, trial and appellate, content themselves with merely determining whether the particular evidence of other crimes does or does not fit in one of the approved classes, they may lose sight of the underlying policy of protecting the accused against

476

unfair prejudice. The policy may evaporate through the interstices of the classification.

Accordingly, some of the wiser opinions (especially recent ones) recognize that the problem is not merely one of pigeonholing, but one of balancing, on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility.

Such a balancing calls for a large measure of individual judgment about the relative gravity of imponderables. Accordingly, some opinions stress the element of discretion. It should be recognized, however, that this is not a discretion to depart from the principle that evidence of other crimes, having no substantial relevancy except to ground the inference that accused is a bad man and hence probably committed this crime, must be excluded. The leeway of discretion lies rather in the opposite direction, empowering the judge to exclude the other-crimes evidence, even when it has substantial independent relevancy, if in his judgment its probative value for this purpose is outweighed by the danger that it will stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial. Discretion implies not only leeway but responsibility. A decision clearly wrong on this question of balancing probative value against danger of prejudice will be corrected on appeal as an abuse of discretion." (Footnotes omitted).

In the case *sub judice,* as indicated earlier, we have concluded that error in instructing the jury compels reversal

and remand. We therefore deem it unnecessary and inadvisable in this appeal to decide whether the trial court committed reversible error in its ruling on the admissibility of Mrs. Stang's other-crimes testimony; for whatever we may decide on that issue, upon a retrial the facts and circumstances may be different than those previously presented. The admissibility, *vel non,* of such evidence depends upon the facts and circumstances that exist in a particular case. For the purposes of this appeal, therefore, we shall assume without deciding that the challenged evidence was properly admitted in evidence. We are, nevertheless, constrained to comment that on the record before us the question is a close one and we are inclined to agree with defense counsel's remarks, apparently directed to the prosecutor, during argument on the issue at the trial below: "I think you are just sticking your neck out all the way when you do something like that . . . ." [3]

### III

In instructing the jury relative to the testimony of Mrs. Stang, the trial judge stated:

> "During the course of this trial you also heard about certain crimes being committed against Nancy Carol Stang. That is the young lady who gave the testimony about something that happened on the 19th which was prior to this incident which supposedly happened on the 22nd. Even though there may have been crimes committed against her there are no charges in front of you  for you to

3. We also observe that the record indicates that the challenged evidence was not offered during the appellant's prior trials on the instant charges and that prior to the last trial appellant's motion for a severance of his trial on the Nancy Stang incident was granted in the face of the State's evident desire to try the appellant on the instant charges at the same time. *See* McKnight v. State, 280 Md. 604, 612 (1977), decided after the appellant's trial below, holding that "[A] defendant charged with similar but unrelated offenses is entitled to a severance where he establishes that the evidence as to each individual offense would not be mutually admissible at separate trials". We do not intimate that in granting the severance, the court below was guided by that not yet enunciated test. Nor do we intimate that the type of prejudice forming the basis for granting severance in the McKnight case is the exclusive test for granting a severance under Md. Rule 745 c.

consider in reference to that. You are only considering the charges as to any crimes, if any, committed against the complaining witness in this case, although you may take into consideration the testimony of Nancy Carol Stang in making the determination of guilt or innocence in this present case. But there are no findings necessary by the Court as to whether or not there are some criminal charges a person is guilty of for anything that happened to Nancy Carol Stang."

Appellant contends, as he did below, that this instruction constituted reversible error and we agree.

In 1 Wharton's Criminal Evidence, § 264, it is stated:

"Where evidence of another crime is admitted, the trial judge must instruct the jury as to the *limited purpose* for which it is introduced. The failure so to instruct the jury will constitute reversible error if prejudicial." (Emphasis supplied.)

*See also Mollar v. State, supra* at 300.

The instruction given in this case was not a *limiting* instruction, but rather was one which virtually invited the jury to consider the other-crimes evidence for the very purpose for which it was not admissible: to show a probability that the defendant committed the crime for which he was on trial because he is a man of criminal character. *Ross v. State, supra* at 669.

In *Hoes v. State, supra* at 71, we made clear that:

". . . It is the court's responsibility to offset or avoid as well as it can, the inherent human tendency to substitute a predisposition of guilt for the constitutional presumption of innocence when an accused's reputation as a 'bad man' becomes known."

The court's instruction in the instant case simply advised the jury that it "may take into consideration the testimony of Nancy Stang in making the determination of guilt or

innocence in the present case." *Compare* the instruction given in *Mollar v. State, supra* at 300-302. Rather than offsetting the "inherent human tendency" referred to above, the court's instruction in the instant case allowed the jury to consider Nancy Stang's testimony in any manner it saw fit. We think the instruction given constituted reversible error.

*Judgments reversed; case remanded for new trial; costs to be paid by Baltimore County.*