# RODNEY KING PULLEY *v.* STATE OF MARYLAND

[No. 544, September Term, 1977.]

*Decided February 14, 1978.*

The cause was argued before THOMPSON, DAVIDSON and MOORE, JJ.

*Geraldine Kenny Sweeney, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Harvey Greenberg, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

Appellant, Rodney King Pulley, was convicted in a jury trial in the Criminal Court of Baltimore (Grady, J., presiding) of first degree murder, attempted robbery with a dangerous and deadly weapon, and use of a handgun in the commission of a crime of violence. A motion for a new trial was denied, and the court imposed sentences of life imprisonment for first degree murder, 20 years for attempted robbery (to run consecutively), and 15 years for the handgun offense (to run concurrently).

The issues on this appeal are succinctly stated in appellant's brief:

    I.   "Did the trial court err in refusing defense request for an alibi instruction?"
   II.  "Did appellant's separate convictions and sentences for felony murder and the underlying

felony violate the Fifth Amendment's double
jeopardy clause?"

III. "Did the trial court err in overruling defense
objection to testimony concerning other
uncharged crimes committed by appellant?"

We find reversible error under I and II, above, and are obliged
to remand the case for a new trial, albeit the fourth trial for
these offenses.[1]

## FACTS

Appellant's arrest and subsequent indictment stemmed
from a police investigation of the circumstances surrounding
the death, on October 16, 1974, of one Edsell Phillips, an Ohio
resident, whose body was found in an automobile owned by
him and parked near the Derby Bar on Park Heights Avenue
in Baltimore City. An autopsy report prepared by the Medical
Examiner's office established the cause of death as a gunshot
wound.

Officer David Sweet of the Baltimore City Police
Department provided the initial leads for the investigation.
On October 29, 1974, Sweet was approached by Samuel
Brown, Jr., a distant cousin of the police officer, who
volunteered information concerning a shooting in front of the
Derby Bar. Brown's information implicated himself and
appellant in the events culminating in Phillips' death. Sweet
contacted the Homicide Division, and Brown was arrested.
The State's Attorney's office thereafter agreed to enter a
*nolle prosequi* as to homicide and to permit a guilty plea to
a lesser charge, in exchange for Brown's cooperation in
building the State's case against appellant.

At the trial below, the State's major witness against
appellant was Samuel Brown, Jr. He testified that, on the
evening of the alleged offenses, he first met appellant, who
was a friend of Brown's younger brother, and decided to
commit a robbery with him. Brown was in particular need of
money, his father having threatened to turn him out of the

---

1. Prior to the trial resulting in this appeal, mistrials were declared in two
previous jury trials before Judge James A. Perrott for these and other
offenses.

house if he had not procured a job by that date. Appellant was, at that time, in possession of a handgun. The duo began to explore the neighborhood in search of a victim, but before settling upon one, stopped in a sandwich shop, where Arvin Johnson, a friend of Brown's joined them in their endeavor. The occupant of the car parked at the Derby Bar was eventually chosen as their prey. Brown's role was to trick the occupant into lowering his car window, and then to retreat and act as a look-out. This having occurred, appellant and Johnson approached the victim. Brown heard them arguing over who would receive the money; a shot rang out, and Brown saw appellant with the gun in his hand.

Expert fingerprint evidence was produced by the police to the effect that a latent palmprint found on the window of the victim's car matched appellant's left palmprint.

Appellant testified in his own defense to an entirely different version of his activities. On the evening prior to the homicide, October 15th, appellant was robbed of a leather coat, and borrowed a gun from his cousin, Charles Thomas, presumably to protect himself during his walk home. He resided with his mother and two sisters in the Cherry Hill section of the city, and, that same night, inquired of his mother whether he should attempt to purchase the gun for her protection because of his imminent entry into the Merchant Marine.[2] Appellant's mother declined this offer, and requested that he return the gun.

During the afternoon of October 16th, appellant visited his cousin, Joseph Thomas, brother of Charles Thomas, at his place of work. Joseph invited him to dinner and, upon learning that appellant intended to return the gun to Charles that evening, also offered to drive appellant to Charles' house, after dinner. Appellant accepted the invitation, accompanied his cousin home, and, before dinner, helped him wash his car. While appellant worked on the car's interior, Joseph having gone inside the house, Samuel Brown and a friend stopped

---

2. The only evidence presented with respect to appellant's planned entry into the Merchant Marine was an application to enroll in a seamanship school in Piney Point, Maryland. The application had not, as yet, been accepted, and additional information had been requested by the school relative to a prior arrest.

by. Brown stated that he had "burned a man for some dope" and needed a place to hide. Appellant refused this request, but offered instead to loan Brown the unloaded gun, provided Brown would return it to him that evening. Brown then took the gun and left.

Appellant said he informed his cousin Joseph about the incident, and the latter was upset. He further testified that he had dinner and spent the entire evening at his cousin's house. Later that night, Brown reappeared, returned the gun, and stated to appellant that he had shot a man. After Brown left, appellant ran to the vicinity of the Derby Bar, where Brown had said the shooting occurred, saw the parked car, and then ran back to his cousin's house. Appellant claimed to have been absent from the house for only this ten-minute period during the entire evening. He subsequently returned the gun to his cousin, Charles Thomas, and learned, at that time, that the gun contained bullets.

Joseph Thomas and his wife, Shirley, corroborated appellant's testimony that he had spent the entire evening at their home on the date of the incident, and that he had been gone for "no more than five minutes" late that night. Joseph further acknowledged that appellant had told him about lending the gun to a friend before dinner.

## I

At the close of the trial court's instructions, appellant's counsel excepted to the court's failure to charge the jury with respect to the alibi evidence presented. The following proposed instruction had previously been submitted in writing by appellant:

> "Evidence has been introduced in this case by the Defendant, Rodney Pulley, tending to establish that at the time of the alleged offense he was elsewhere, specifically, at the home of his cousin, Joseph Thomas. In this regard, I remind you that the burden of proving the Defendant guilty is upon the prosecution. The law never imposes upon a

defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

"If, after consideration of all of the evidence in this case, you have a reasonable doubt as to whether the Defendant was present at the time and place the alleged offense was committed, you must acquit him."

The court declined to give a separate instruction on alibi, stating:

"Well, alibi under the recent cases, is being held just one of the other elements that the State has to prove, namely, that the man was present at the scene of the crime. . . . [I]f the defendant . . . seeks to call to the attention of the jury one fact which they have tried to disprove, namely, the lack of presence at the scene of the crime, then the State, it seems to me, is entitled to a reference to the other testimony, that showing that he was at the scene of the crime and pulled the trigger. I think alibi testimony is really a separate and distinct instruction. . . . It is no longer a facet that requires special reference. It is one factor concerning presence at the scene of a crime, which the State either proves or doesn't prove. . . ."

Judge Grady was, of course, eminently correct in ruling that "alibi" does not constitute an affirmative defense. As Judge Moylan stated for this Court in *Robinson v. State*, 20 Md. App. 450, 459, 316 A. 2d 268, 272 (1974):

"We think the sound view to be that an alibi is not an affirmative defense, placing any burden upon a defendant beyond the self-evident one of attempting to erode the State's proof to a point where it no longer convinces the fact finder beyond a reasonable doubt. Proof of an alibi, like any other defense testimony, is simply a means of controverting the State's effort to establish criminal agency." *Daniels v. State*, 24 Md. App. 1, 5, 329 A. 2d 712, 715 (1974); *Jackson v. State,* 22 Md. App. 257, 322 A. 2d 574

(1974); *State v. Grady,* 276 Md. 178, 345 A. 2d 436 (1975).

We hold, however, that the trial court drew an erroneous conclusion from this proposition when it ruled that a separate alibi instruction was not required.

It is a settled proposition of law in Maryland that the trial court, in a criminal case, is obliged to give advisory instructions "on every point of law essential to the crime charged and supported by the evidence" at the request of any party. *Carter v. State,* 15 Md. App. 242, 248, 289 A. 2d 837, 840-41 (1972); Md. Rule 757(b).[3] The application of this principle to the subject of alibi was implicitly recognized in *Couser v. State,* 36 Md. App. 485, 374 A. 2d 399 (1977). We there held, however, that the lower court's failure to instruct on alibi was not erroneous where a request for a specific instruction had not been made below, and no evidence had been presented to support an alibi charge. 36 Md. App. at 499, 374 A. 2d at 406-07.

In the instant case, a request for a specific alibi instruction was, of course, made. Further, the evidence presented by appellant, *i.e.,* his own testimony, corroborated by that of his cousins, Joseph and Shirley Thomas, if believed, would have been sufficient to establish an alibi for the entire period during which the sequence of events related by the State's witness, Samuel Brown, unfolded. Under these circumstances, the court's refusal to grant appellant's request for an alibi instruction, where the instruction correctly stated applicable law, *see Dillon v. State,* 27 Md. App. 579, 342 A. 2d 677 (1975), *aff'd,* 277 Md. 571, 357 A. 2d 360 (1976), was reversible error.

Our holding is in conformance with the prevailing rule in the majority of state jurisdictions.[4] *See, e.g., Jackson v. State,* 374 A. 2d 1 (Del. 1977); *Davis v. State,* 254 So. 2d 221 (Fla.

---

3. At the time of trial, this rule appeared in essentially the same form as Md. Rule 756(b).

4. For the minority view that the failure to charge on alibi is not reversible error, *see, e.g.,* State v. Hess, 449 P. 2d 46 (Ariz. App. 1969); People v. Coleman, 365 N.E.2d 246 (Ill. App. 1977); Parsley v. Commonwealth, 321 S.W.2d 259 (Ky. 1959); Jenkins v. State, 134 P. 260 (Wyo. 1913). *See also* People v. McGinnis, 256 N.W.2d 587 (Mich. 1977).

App. 1971); *Hill v. State,* 228 S.E.2d 898 (Ga. 1976); *State v. Simon,* 375 S.W.2d 102 (Mo. 1964); *State v. Searles,* 197 A. 2d 384 (N.J. Super. 1964); *People v. Ciprio,* 294 N.Y.S.2d 305 (Sup. Ct. 1968); *Schroeder v. State,* 543 S.W.2d 382 (Tex. Crim. App. 1976); *Johnson v. Commonwealth,* 168 S.E.2d 97 (Va. 1969); Annot., 118 A.L.R. 1303, 1312 (1939); 4 Wharton's Criminal Procedure § 540 (12th ed. Torcia 1976). The defendant must, of course, have introduced sufficient evidence at trial to constitute an alibi in order for the rule to apply. This principle was well-stated in *Ferguson v. State,* 488 P. 2d 1032, 1038-39 (Alaska 1971):

> "[W]e join the majority of courts which hold that where there has been sufficient evidence to raise an issue of alibi, and an alibi instruction has been requested, the failure to so instruct constitutes prejudicial and reversible error.
>
> *"Sufficient evidence to raise an alibi issue exi[s]ts when the defendant's evidence, if believed, reasonably excludes the possibility of his presence at the time and place of the alleged offense; the defendant's evidence must tend to prove that it was impossible or highly improbable that he was at the scene of the crime when it was alleged to have occurred."* (Emphasis added.)

The Alaska court also dismissed as "overly technical" the State's argument that a separate instruction was not required simply because alibi was not an affirmative defense. 488 P. 2d at 1038.

The federal courts have been sensitive of the rationale for requiring an instruction on alibi. The due process clause of the Fourteenth Amendment protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. *In re Winship,* 397 U. S. 358, 364 (1970). Since alibi is generally held not to be an affirmative defense, an alibi instruction removes the possibility that the jury will place the burden of proof upon the defendant with respect to the alibi. *Stump v. Bennett,* 398 F. 2d 111 (8th Cir.), *cert. denied,* 393 U. S. 1001

(1968). In the recent case of *Wright v. Smith,* 434 F. Supp. 339, 344 (W.D.N.Y. 1977), the court stated:

> "When a defendant raises an alibi defense, he is entitled to jury instructions that specify that the Government must bear the burden of persuasion on this element of the offense as well. *See United States v. Marcus,* 166 F.2d 497, 503-04 (3d Cir. 1948). *The jury must be informed that, once a defendant has offered proof that he was not present at the time and place that the crime was committed, then the Government must convince the jury beyond a reasonable doubt that the defendant's alibi is not true [United States v. Booz,* 451 F. 2d 719, 723 (3d Cir. 1971), *cert. denied,* 414 U. S. 820, 94 S. Ct. 45, 38 L.Ed.2d 52 (1973)], *and that the defendant was in fact present at the scene when the crime was committed.* If such specific instructions are not given when a defendant offers alibi evidence at trial, there is a likelihood that the jury will become confused about the burden of persuasion. . . ." (Emphasis added.) *See also Fay v. United States,* 22 F.2d 740 (9th Cir. 1927); *United States v. Burse,* 531 F.2d 1151 (2d Cir. 1976); *United States v. Megna,* 450 F.2d 511 (5th Cir. 1971); *Stump v. Bennett, supra; United States v. Alston,* 551 F.2d 315 (D.C.Cir. 1976).[5]

We find no merit in the State's contention in the instant case that the requested alibi instruction was "fairly covered" by the trial court's other instructions with respect to the presumption of innocence and the burden of proving the appellant guilty beyond a reasonable doubt. Sufficient evidence was presented by appellant for his alibi to have been

---

5. In the following federal cases, cited in United States v. Burse, supra, 531 F. 2d at 1153, no prejudicial error was found in the trial court's failure to give an alibi instruction: United States v. Coughlin, 514 F. 2d 904 (2d Cir. 1975) (no written request at trial); United States v. Cole, 453 F. 2d 902 (8th Cir.), *cert. denied,* 406 U. S. 922 (1972) (alibi evidence did not cover entire time period of crime); United States v. Erlenbaugh, 452 F. 2d 967 (7th Cir. 1971), *aff'd,* 409 U. S. 239 (1972); United States v. Lee, 483 F. 2d 968 (5th Cir. 1973) (defendant's presence not an element of crime charged). *See also* United States v. Guillette, 547 F. 2d 743 (2d Cir. 1976).

a complete defense to the crimes charged, if believed, and, since a request was made, he was entitled to have the jury separately instructed on this issue.[6] *United States v. Burse, supra; Carter v. State, supra; Couser v. State, supra.*

## II

Appellant alleges that his separate conviction and sentence for attempted armed robbery and first-degree felony murder are violative of the double jeopardy clause of the Fifth Amendment under the recent case of *Newton v. State,* 280 Md. 260, 373 A. 2d 262 (1977), decided some two months after the imposition of sentence in the instant case. The Court of Appeals held in Newton that "independent proof of wilfulness, premeditation and deliberation" would prevent the merger of convictions for felony murder and the underlying felony offense. 280 Md. at 269, 373 A. 2d at 267. In the absence of such independent proof, however, the underlying felony and the murder would merge. *Id.; Frye v. State,* 37 Md. App. 476, 378 A. 2d 155 (1977), *cert. granted,* December 23, 1977.

The State concedes in its brief that the victim in the instant case was randomly chosen and that "the record, transcript and the trial judge's instructions do not support a finding of independent evidence of premeditation and deliberation sufficient to avoid the proscriptions of the double jeopardy clause of the Fifth Amendment." Our review of the record confirms this conclusion.

The trial court therefore erred in convicting appellant of both felony murder and the underlying felony of attempted armed robbery.

## III

During the direct examination of the State's witness, Samuel Brown, Jr., evidence was elicited with respect to appellant's apparent negotiations for the purchase of "Dummies" (valium capsules) from certain other individuals in the basement of Brown's home. The court overruled the

6. For a summary of case law on whether an alibi instruction is required in the absence of a timely request at trial, *see* Annot., 72 A.L.R. 3d 547 (1976).

objections of appellant's counsel to this testimony; the following colloquy then occurred at the bench:

> "Mr. Walker [Defense Counsel]: If Your Honor please, I respectfully move for mistrial at this time. The State has now involved . . . my client . . . in evidence of other criminal misconduct. . . . The evidence of other crimes, Your Honor, in certain particular isolated situations is relevant. I don't understand this to be one of them. I think it's highly prejudicial. I think it's irrelevant. . . .
>
> "Mr. Brave [State's Attorney]: Well, I would prove, Your Honor, that this witness would testify that following the purchase of these 'Dummies,' Rodney Pulley consumed some, during the hour ensued, those 'Dummies' took their effect and he was acting rather bizarre, strange, and high during the course of this entire trip . . . which finally resulted in the shooting.
>
> "The Court: Are you saying that this series of events leading up to the death of this deceased in this case followed the taking of some of these drugs.
>
> "Mr. Brave: Yes.
>
> "The Court: Very well. The motion for mistrial is denied. *It seems to me impossible to separate every activity that someone may have whether it's legal or illegal if it is part and parcel of a series of events leading to the crime.*" (Emphasis added.)

The rule with respect to evidence of "other crimes" or prior criminal conduct was explicated in *Ross v. State,* 276 Md. 664, 669, 350 A. 2d 680, 684 (1976): "[I]n a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial . . . is irrelevant and inadmissible." Such evidence should be subjected to "rigid scrutiny" because of its potential for prejudice, and should be admitted only if it comes within one of the recognized exceptions. *Id.; White v. State,* 33 Md. App. 626, 630, 365 A. 2d 605, 607 (1976). Such an exception is where

"the several offenses are so connected in point of time or circumstances that one cannot be fully shown without proving the other. . . ." *Ross v. State, supra,* 276 Md. at 670, 350 A. 2d at 684. *See also Johnson v. State,* 9 Md. App. 327, 264 A. 2d 280 (1970).

In view of our disposition of this case under the alibi instruction issue, we need not decide whether the admission of the challenged evidence constituted grounds for a mistrial. Upon a retrial, if the same evidence is offered, its potentially prejudicial effect should be carefully evaluated by the trial court in the light of *Ross v. State, supra. See also Brafman v. State,* 38 Md. App. 465, 381 A. 2d 687 (1978).

*Judgments reversed; remanded for new trial; Mayor and City Council of Baltimore to pay the costs.*