*State of Maryland v. Christopher Mann*, No. 80, September Term 2018. Opinion by Beachley, J.

**INEFFECTIVE ASSISTANCE OF COUNSEL—FAILURE TO REQUEST ALIBI JURY INSTRUCTION**

Defendant produced alibi evidence through himself and four witnesses to show that he could not have kidnapped and murdered the victim in this case. Nevertheless, at defendant's trial, the trial court did not provide the jury with an alibi jury instruction, and defendant's trial counsel unintentionally failed to request the instruction.

Following his convictions for murder and kidnapping, defendant filed a petition for post-conviction relief. Defendant sought a new trial on the basis that his trial counsel rendered ineffective assistance by failing to request the instruction. The post-conviction court granted defendant's petition and granted him a new trial. The State appealed.

*Held*: Judgment affirmed. Defense counsel's failure to request an alibi jury instruction constituted deficient performance where there was no strategic reason not to request such instruction. As to the prejudice prong in *Strickland v. Washington,* 466 U.S. 668 (1984), Maryland courts currently view the significance of the alibi instruction with a heightened sensitivity. Specifically, courts must address the concern that the jury will erroneously place a burden of proof upon the defendant when he or she provides alibi evidence. This concern can be alleviated by the trial court providing the instruction.

Circuit Court for Baltimore City
Case No. 000104002009

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 80

September Term, 2018

_____

STATE OF MARYLAND

v.

CHRISTOPHER MANN

_____

Meredith,
Friedman,
Beachley,

JJ.

_____

Opinion by Beachley, J.

_____

Filed: May 1, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case concerns post-conviction proceedings following appellee Christopher Mann's convictions in the Circuit Court for Baltimore City. There, following a five-day jury trial which concluded on August 12, 2004, the jury convicted Mann of felony murder, kidnapping, and conspiracy to commit kidnapping. A panel of this Court affirmed Mann's convictions on direct appeal. *Mann v. State*, No. 1895, Sept. Term 2004 (filed Jan. 12, 2007). Mann subsequently filed a petition for post-conviction relief. In an order dated February 13, 2018, the post-conviction court granted Mann's motion and ordered a new trial on the basis that Mann's trial counsel rendered ineffective assistance by failing to request an alibi jury instruction. The State successfully applied for leave to appeal, and presents the following issue for our review:

> Did the [post-conviction] court err when it found that defense counsel had been constitutionally ineffective for failing to request a superfluous jury instruction?

We perceive no error and affirm.

## BACKGROUND

Because the underlying facts of this case were fully developed in Mann's direct appeal and are not in dispute, we provide only a brief recitation for background. On April 22, 2004, between 7:00 p.m. and midnight, Ricky Prince was murdered. The State's theory of the case was that Mann and an accomplice kidnapped and murdered Prince in retaliation for Prince's cooperation with police and prosecutors in two other criminal prosecutions. At trial, Mann called four "alibi" witnesses who testified to his whereabouts on April 22, 2004, in an effort to show that he was not present when Prince was kidnapped and murdered. Despite the fact that four alibi witnesses testified in Mann's defense, Mann's

trial counsel did not request an alibi jury instruction. As stated above, the jury convicted Mann of felony murder, kidnapping, and conspiracy to commit kidnapping. The court sentenced Mann to life imprisonment for felony murder, and twenty years consecutive for conspiracy to commit kidnapping.[1]

In his post-conviction petition, Mann alleged, among other things, that his trial counsel rendered ineffective assistance of counsel by failing to request an alibi jury instruction.[2] At the hearing on Mann's post-conviction petition, Mann's trial counsel conceded that there was no reason not to request the alibi instruction. Indeed, as the State concedes in its brief, "there is no dispute of material fact. [Mann's] counsel simply overlooked requesting the 'alibi' jury instruction, notwithstanding his presentation of an alibi defense." As noted, the post-conviction court found that trial counsel rendered ineffective assistance by failing to request an alibi instruction and ordered a new trial.

## STANDARD OF REVIEW

"The review of a postconviction court's findings regarding ineffective assistance of counsel is a mixed question of law and fact." *Newton v. State*, 455 Md. 341, 351 (2017)

---

[1] Mann's kidnapping conviction merged into his felony murder conviction for sentencing purposes.

[2] Additionally, Mann alleged ineffective assistance of counsel because: trial counsel failed to object to "other crimes" evidence, trial counsel did not move for a mistrial, trial counsel did not move for modification of sentence, trial counsel did not file an application for review by a three-judge panel, and that the cumulative effect of these errors cast doubt upon the reliability of the verdict.

The post-conviction court rejected all of these allegations of error, but declined to address the "cumulative effect" argument because it was granting relief on the basis of the failure to request an alibi jury instruction.

(citing *Harris v. State*, 303 Md. 685, 698 (1985)). Because appellate courts do not make findings of fact, "we defer to the factual findings of the postconviction court unless clearly erroneous." *Id.* "But we review the [post-conviction] court's legal conclusion regarding whether the defendant's Sixth Amendment rights were violated without deference." *Id.* at 351-52.

## DISCUSSION

The Sixth Amendment of the United States Constitution and Article 21 of the Maryland Declaration of Rights guarantee all criminal defendants the right to the effective assistance of counsel. *Duvall v. State*, 399 Md. 210, 220-21 (2007). In order for a criminal defendant to successfully vacate his conviction on this basis, he must satisfy a two-prong test established in the landmark Supreme Court case *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The two-part test is as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* As we shall explain, the post-conviction court correctly determined that Mann's counsel rendered deficient performance, and because this deficient performance prejudiced Mann's defense, the result of Mann's trial is unreliable.

I.   DEFICIENT PERFORMANCE

At the outset, we note that Maryland Rule 4-325(c) states that "The court may, and

3

at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding." Regarding when the court must instruct the jury as to the applicable law, the Court of Appeals has held that "[a] requested jury instruction is applicable if the evidence is sufficient to permit a jury to find its factual predicate." *Bazzle v. State*, 426 Md. 541, 550 (2012). As to the burden of establishing that predicate, "the threshold is low, as a defendant needs only to produce 'some evidence' that supports the requested instruction[.]" *Id*. at 551.

> In assessing *Strickland's* deficiency prong, the Court of Appeals has stated that
>
> the proper standard for attorney performance is that of reasonably effective assistance. "Prevailing professional norms" define what constitutes reasonably effective assistance, and all of the circumstances surrounding counsel's performance must be considered. Because it is "tempting" for both a defendant and a court to second-guess a counsel's conduct after conviction, courts must be "highly deferential" when they scrutinize counsel's performance. Reviewing courts must thus assume, until proven otherwise, that counsel's conduct fell within a broad range of reasonable professional judgment, and that counsel's conduct derived not from error but from trial strategy.

*Mosley v. State*, 378 Md. 548, 557-58 (2003) (internal citations and quotation marks omitted). In other words, the deficiency prong depends upon whether counsel's conduct was reasonable, and, in that analysis, a reviewing court will not assume error in counsel's performance.

In *Schmitt v. State*, 140 Md. App. 1, 26 (2001), Judge Charles E. Moylan, Jr., wrote for this Court and considered whether trial counsel's strategic decision not to request an alibi instruction constituted deficient performance under *Strickland*. There, Schmitt was charged with first-degree murder (and other charges) for a shooting that occurred at a motel

4

between 1:45 and 2:00 a.m. *Id*. at 32. At trial, Schmitt's alibi witness testified that he and Schmitt arrived at the motel between 1:30 and 2:00 a.m., but that Schmitt "was inside the motel rather than outside when the fatal shots were fired." *Id*. Judge Moylan noted, however, that Schmitt's alibi witness "was in the bathroom of their motel room when he heard shots. [The alibi witness] testified that [Schmitt] was in the motel room when he, [the alibi witness], came out of the bathroom. He never said how long he was in the bathroom." *Id*. at 32-33.

Addressing whether Schmitt's trial counsel rendered deficient performance by choosing not to request an alibi instruction, Judge Moylan began by noting that "Maryland's trial courts were through the early 1970's regularly referring to the alibi as an 'affirmative defense' and squarely allocating to the defendant the burden of persuasion as to such a defense by a preponderance of the evidence." *Id*. at 28. In *Robinson v. State*, 20 Md. App. 450, 459 (1974), an opinion Judge Moylan also authored, this Court definitively corrected that misconception, stating that "an alibi is not an affirmative defense, placing any burden upon a defendant beyond the self-evident one of attempting to erode the State's proof to a point where it no longer convinces the fact finder beyond a reasonable doubt."

Judge Moylan initially questioned whether the facts in *Schmitt* sufficiently constituted evidence of an alibi. Judge Moylan defined "alibi" to mean "[a] defense that places the defendant at the relevant time of crime in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." *Schmitt*, 140 Md. App. at 31 (quoting *Black's Law Dictionary* 71 (6th ed. 1990)). Because Schmitt's alibi witness placed him at the scene of the crime at the relevant time,

5

but simply inside rather than outside the motel room,[3] Judge Moylan pondered,

> Was an alibi defense generated in this case? It is a close call, but technically it may have been. It was not, however, so unmistakably identifiable as an alibi defense from way down the glen as to brand the failure to recognize it as a mark of lawyerly incompetence.

*Schmitt*, 140 Md. App. at 33. Although noting that it was a "close call," by proceeding to analyze *Strickland's* deficiency prong, Judge Moylan assumed that the evidence was sufficient to generate an alibi instruction.

Judge Moylan acknowledged the deference afforded to counsel's strategic trial decisions, noting that,

> The entitlement to an instruction if you want one does not imply that you are derelict for not wanting one. By analogy, a defendant is constitutionally entitled to an instruction that his failure to take the stand will not be held against him. It is perfectly sound trial strategy, however, to wish to forego such an instruction so as not to draw the jury's attention to the inevitably suspicious failure to take the stand[.]

*Id*. at 34 (citing *Lakeside v. Oregon*, 435 U.S. 333 (1978)).

Turning to Schmitt's case, Judge Moylan recognized that trial counsel intentionally chose not to request an alibi jury instruction because he believed that "[an] alibi instruction says you are to consider and apply the evidence along with any other evidence in the case. To me that tells the jurors absolutely nothing." *Id*. Judge Moylan acknowledged the reasonableness of this strategy, stating, "In this case, counsel may not have wanted to raise any specter possibly suggested by the word 'alibi.'" *Id*. at 35. Ultimately, Judge Moylan vindicated that strategic decision, holding that, "With respect to the disinclination (*not the*

---

[3] As stated above, we noted that Schmitt's alibi witness could not definitely account for Schmitt's whereabouts when the shots were fired. *Schmitt*, 140 Md. App. at 32-33.

*failure but the disinclination*) of trial counsel to request a special alibi instruction, we see no deficiency in terms of his trial performance." *Id*. at 37 (emphasis added).

*Schmitt* is clearly distinguishable from the instant case. First, there is no question here that Mann generated an alibi defense. According to the State's case, Prince was in an altercation with Mann and others at a McDonald's at the corner of Liberty Road and Rolling Road shortly before 7:00 p.m. Following this altercation, Mann and a friend allegedly left the McDonald's with Prince and ultimately killed him. Mann's own statements to police confirmed that he was present at the McDonald's and had an argument with Prince that evening. Mann told police, however, that after someone stole Prince's car, Mann went to his father's house and then to the home of his friend, Jeffrey Johnson, before ultimately spending the rest of the evening with his girlfriend, Tanea Jenkins.

At trial, Johnson and Jenkins testified consistently with Mann's statement to the police. Jenkins testified that at approximately 6:44 p.m. on the night of the murder, Mann visited her where she worked at Target. Jenkins testified that she gave him some money for food during this visit. She also testified that Mann called her at approximately 9:00 p.m. later that evening, asking her to pick him up at his mother's house, and that the two were together from approximately 9:30 p.m. on April 22, 2004, until 11:00 a.m. on April 23, 2004.

Regarding the gap in time when Mann was not with Jenkins, Johnson testified that Mann came to his house at approximately 7:30 to 7:45 p.m. and that they played a video game until approximately 8:30 p.m., when Johnson drove Mann to Mann's mother's house, dropping him off at approximately 8:45 p.m. The testimony of these alibi witnesses, in

7

conjunction with Mann's own testimony, generated sufficient evidence to warrant the alibi jury instruction.[4] *See id.* at 27 (recognizing that "the defendant's uncorroborated testimony that he was at some other place at the time of the crime is sufficient to generate the issue") (quoting *Smith v. State*, 302 Md. 175, 180 (1985)).

Turning to the strategy in not requesting the instruction, the State concedes that there was none: "[T]here is no dispute of material fact. Defense counsel simply overlooked requesting the 'alibi' jury instruction, notwithstanding his presentation of an alibi defense." In fact, Mann's trial counsel testified at the post-conviction hearing that "If it's an alibi defense, you ask for an alibi instruction." Although Judge Moylan found no deficiency in counsel's "disinclination" to request the alibi instruction in *Schmitt*, here there was simply a "failure." *Id.* at 37. Unlike *Schmitt*, the record here is devoid of any strategic reason for not requesting an alibi instruction. Accordingly, we hold that counsel's non-strategic failure to request the alibi jury instruction fell below the "broad range of reasonable professional judgment" standard recognized in *Strickland* and its progeny, and therefore constituted deficient performance. *Mosley*, 378 Md. at 558.

---

[4] In addition to Johnson and Jenkins, two other alibi witnesses testified in Mann's defense. Nikita Peay, Jenkins's friend, corroborated Jenkins's testimony. Peay testified that Jenkins picked her up at 8:00 p.m. on April 22, 2004, and that she, Jenkins and Mann were together from 9:30 p.m. to 11:15 p.m. on April 22, 2004. The other alibi witness was Rhonda Harper, who also corroborated Jenkins's testimony. Harper testified that she is Mann's father's first cousin, that she lived at Mann's father's house, and that Mann and Jenkins arrived at Mann's father's house at approximately 11:45 p.m. on April 22, 2004. Additionally, Harper stated that she saw both Mann and Jenkins again at Mann's father's house at approximately 6:00 a.m. the following morning.

## II.     PREJUDICE

Having established that counsel's failure to request an alibi instruction constituted deficient performance, we next turn to whether that performance constituted prejudice. Regarding *Strickland*'s prejudice prong, the Supreme Court has provided that "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.   The Court of Appeals has interpreted the language "reasonable probability" to mean "there was a substantial or significant possibility that the verdict of the trier of fact would have been affected." *Bowers v. State*, 320 Md. 416, 426 (1990).

Regarding the Rule governing instructions to the jury, the State correctly notes that Rule 4-325(c) provides that "The court need not grant a requested instruction if the matter is fairly covered by instructions actually given."  Relying on this language, the State argues that the trial court fairly covered the alibi instruction by instructing the jury: 1) to consider all testimony from all of the witnesses—which would include Mann's witnesses, 2) to consider all of the evidence in the case, and 3) that the State bore the burden of proof.  In our view, Maryland law does not support the State's contention.

In *Schmitt*, we expressly rejected the notion that the alibi instruction is fairly covered by other jury instructions describing the defendant's presumption of innocence and the State's burden of proof.  140 Md. App. at 30-31.  There, we unequivocally stated, "We find no merit in the State's contention in the instant case that the requested alibi instruction was 'fairly covered' by the trial court's other instructions with respect to the presumption of

9

innocence and the burden of proving the [defendant] guilty beyond a reasonable doubt." *Id.* at 31 (quoting *Pulley v. State*, 38 Md. App. 682, 690 (1978), *aff'd on other grounds*, 287 Md. 406 (1980)). In fact, in *Smith*, 302 Md. at 180, the Court of Appeals expressly addressed this issue stating, "when the defendant requests an instruction specifically addressed to the matter of alibi, the defendant is entitled to a specific alibi instruction, and . . . the trial court's general instructions concerning the prosecution's burden of proof, etc., are not deemed to 'fairly cover' the matter of alibi."

These cases show that Maryland courts approach the alibi instruction with a heightened sensitivity. In *Schmitt*, Judge Moylan addressed the historical concerns related to "alibi" instructions:

> Since instructions today unequivocally place the burden of proving criminal agency (including presence at the scene when pertinent) on the State beyond a reasonable doubt, the value of an arguably redundant alibi instruction (restating the same thing in reverse terms) would seem to be, at most, one of emphasis. When the State proves beyond a reasonable doubt that the crime was committed and that the defendant committed it, it proves beyond a reasonable doubt that the defendant was present, which, *ipso facto*, proves beyond a reasonable doubt that the defendant was not elsewhere.
>
> *Because of the staying power, however, of the notion of an alibi in the public mind, even if that emotionally charged word were never uttered in the courtroom, Pulley v. State, 38 Md. App. 682, 686-91, 382 A.2d 621 (1978), concluded that it was better to err on the side of redundancy. That the word "alibi" possesses such a staying power in the public mind is clear.* The Maryland Pattern Jury Instruction on alibi, for instance, MPJI Cr 5:00, never mentions the word "alibi." The Comment to the instruction makes the reason clear:
>
>> The instruction does not contain the word "alibi" because it may incorrectly suggest that alibi is an affirmative defense.

*Schmitt*, 140 Md. App. at 30 (emphasis added).

10

We note that *Pulley* involved a trial court's refusal to provide a requested alibi instruction that did not even contain the word "alibi." 38 Md. App. at 686-87. The requested instruction simply provided, in relevant part:

> Evidence has been introduced in this case by the Defendant, [Pulley], tending to establish that at the time of the alleged offense he was elsewhere, specifically, at the home of his cousin [. . . .] In this regard . . . the burden of proving the Defendant guilty is upon the prosecution. The law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

*Id.* In rejecting the request to give the instruction, the trial court stated that the instruction "is no longer a facet that requires special reference. It is one factor concerning presence at the scene of a crime, which the State either proves or doesn't prove[.]" *Id.*

On appeal, we reviewed other jurisdictions, including federal courts, and expressly disagreed with the trial court. Instead, we noted,

> The federal courts have been sensitive of the rationale for requiring an instruction on alibi. The due process clause of the Fourteenth Amendment protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. Since alibi is generally held not to be an affirmative defense, an alibi instruction removes the possibility that the jury will place the burden of proof upon the defendant with respect to the alibi.

*Id.* at 689 (citations omitted). The *Pulley* Court stressed the importance of giving an alibi instruction, citing *Wright v. Smith*, 434 F. Supp. 339, 344 (W.D.N.Y. 1977)[5] for the proposition:

---

[5] We note that the United States Court of Appeals for the Second Circuit reversed *Wright v. Smith*, 434 F. Supp. 339 (1977) in *Wright v. Smith*, 569 F.2d 1188 (2nd Cir. 1978). Nevertheless, our opinion in *Pulley*, 38 Md. App. at 690, which cites to the reversed *Wright* case, currently remains good law in Maryland.

11

When a defendant raises an alibi defense, he is entitled to jury instructions that specify that the Government must bear the burden of persuasion on this element of the offense as well. *The jury must be informed that, once a defendant has offered proof that he was not present at the time and place that the crime was committed, then the Government must convince the jury beyond a reasonable doubt that the defendant's alibi is not true, and that the defendant was in fact present at the scene when the crime was committed. If such specific instructions are not given when a defendant offers alibi evidence at trial, there is a likelihood that the jury will become confused about the burden of persuasion . . . .*

*Id.* at 690 (emphasis added) (internal citations and quotation marks omitted).

From this language we extract two important concepts. First, there exists a strong concern that a jury will assume that a criminal defendant bears some burden of proof by introducing alibi evidence, even if the word "alibi" is never uttered in the courtroom. *Schmitt*, 140 Md. App. at 30.[6] Second, if a defendant introduces alibi evidence, the State must overcome that evidence and prove beyond a reasonable doubt that the defendant committed the charged crime. *Pulley*, 38 Md. App. at 690. By providing an alibi instruction, the trial court sufficiently relieves these concerns. Here, where an alibi instruction was not given because trial counsel failed to request it, there is "a substantial or significant possibility that the verdict of the trier of fact [was] affected." *Bowers*, 320 Md. at 426. Here, Mann was prejudiced because he did not receive the benefit of the alibi instruction as a result of his counsel's failure to request it.

---

[6] When Judge Moylan penned *Schmitt* in 2001, he recognized "the staying power . . . of the notion of an alibi in the public mind, even if that emotionally charged word were never uttered in the courtroom." 140 Md. App. at 30. He pondered, however, how long that "staying power" would last: "Once the reason for a rule disappears, the rule itself will linger for a decade or two (or three or four) but ultimately disappear itself. This temporary aberration will not last forever." *Id.* at 31.

Given the heightened sensitivity expressed by Maryland courts concerning the importance of the alibi instruction, we hold that the failure (*not the disinclination but the failure*) of trial counsel to request the instruction in this case constituted ineffective assistance of counsel. We therefore affirm the post-conviction court's judgment.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

13